Before we proceed, just for the record, if you will, I'm sure as you've noticed, Justice Holdridge is not with us today. He is under the weather, but he will be participating in the hearing. In the disposition of this case, he will be listening to the tapes and of course has already had the benefit of the briefs and he and his clerks have already been working on the briefs and he will be a full participant. And with that, Mr. Wiggins. Mr. Wiggins. May it please the court, distinguished jurist, members of the public, and members of the jury, that I present before you today, Mr. Wiggins. Counselor Green, my associate, Ms. Shulman, there are several issues put before the court in this review. The first and very important one is the standard of review. The standard of review here, as in all summary judgment matters, is a de novo standard of review. The FLE maintains that this is an abuse of discretion review, but it is not. It is a de novo review, which is extremely important, of course. You have read the briefs, and I am not going to belabor the briefs. Simply put, the cases that they relied on basically had to do with judgment on the pleadings. The Mobile Oil case that was cited actually was explicitly a determination in terms of review based on de novo review. It was not an abuse of discretion. The issue, one of the issues in this case, as you are well aware, is a prayer for section 155 damages. That is appropriate for an abuse of discretion review, but certainly not the matters that are before this court. There are the cross motions for summary judgment. You have read that. And there is also the question about whether or not there are questions raised in the pleadings that were put forth by State Farm. The defendant, State Farm, misapprehends the issues framed in terms of them saying that there is a bona fide dispute. We maintain, as Reginald maintains, that this is a first assignment of error that the trial court erred in determining the existence of a bona fide dispute. An additional issue is that the defendant repeatedly argues that whether resides primarily is ambiguous is an unsettled question of law. This is incorrect. The Supreme Court has provided clear guidance over determination whether a policy provision is ambiguous. And in most cases, this requires an examination of the factual context to which the insurer attempts to apply the phrase. Citing the American States case that's in our brief, applying the Supreme Court's promulgated rules, and that's American States as well as the Gillen versus State Farm decision, to the instant facts, resides primarily as clearly ambiguous by application of subtle law. And had State Farm conducted an examination or an investigation into the status of Reginald, who is now an adult by the way, of his residence, it would have been aware of this ambiguity. Thus, the failure to conduct even a cursory investigation by interviewing its insurers while they were unrepresented, keeping in mind that Reginald's grandparents were the insurer. This boy had lived most of his life, with the rare exception of a few years where his family relocated to Kansas City, Missouri. He had lived his whole life with his grandparents and he still maintained clothes, furnishings, toys, all of his belongings were at his grandparents. So whether or not he at any point, and this came up in the original appeal of this matter, whether or not a 14-year-old articulated a desire to live somewhere else, there's never been any evidence that he also articulated a desire to abandon his grandparents' residence, the insurer under this policy. We maintain, Reginald does, that the failure of this insurer who we maintain had a duty to investigate before they denied, and there was never a denial of this claim prior to the litigation that State Farm filed. Had they conducted any kind of investigation, they would have been able to find out that this boy in fact did reside with his grandparents. State Farm continues to argue there is no clear precedent interpreting the language under similar circumstances. But where the facts demonstrate competing reasonable interpretations of a policy provision, it's ambiguous and it must be construed in favor of the insurer. That's the American States case and that's also the outboard marine case. A policy provision which purports to limit coverage must be clear, definite, and specific. The only exception to these constructions that we were able to find is, and we agreed with, State Farm's brief in as much as they cite that Baxter International case. That was a different situation factually in terms of the inception of the contract than automobile contracts. They had equal bargaining position. And so that's the difference. The Williams did not have any kind of, you either take the policy that these insurers for auto insurance offer or you leave it. You have no negotiating ability to say, hey, how about taking out paragraph 5 clause 3. And so if the court agrees that Supreme Court rules of construction of insurance policies do not apply unless they were promulgated in construing identical policy provisions applied to very similar facts, I believe that this argument flies in the face of 100 years of jurisprudence. Justice Wright and McDade in the original review of this case, each raised separate reasonable inferences which would negate State Farm's claim of a bona fide dispute. Tangentially, each of those inferences rest upon State Farm's failure to define primarily resides in its policy despite having every opportunity to do so when they drafted it. And there's an inference that this omission was intentional and thus this prior planning negates any possible innocent construction or the existence of a bona fide dispute since the defendant drafted the policy with the intention of creating an ambiguity that the insurer could argue either side of the dispute depending on the facts. Justice Wright, State Farm presumably was familiar, and this is a quote from her, her opinion, was familiar with any difficulties arising from the language of their policy and drafted their prayer for relief seeking a declaration that Hutchins did not reside with his grandparents. Given that State Farm never even contacted its insured, and that's prose quotes, our argument is in furtherance of her opinion, given that State Farm never even contacted its insured, it had no way of knowing that this court held that Reginald did reside with his grandparents as a matter of law. And so based upon Justice Wright's inference, this matter was litigated for nine years because State Farm was attempting to avoid having the ambiguity… Was the underlying action URI action been settled? Yes, they offered policy limits. To avoid having the ambiguity of its policy language determined, and payment of this claim was unreasonably and vexatiously delayed for life periods solely as a result of State Farm's litigation strategy and willful ignorance of the facts of this case. And there's also a note somewhere, and I can't find it right now, but there's actually a note where the adjuster who was assigned the handling of this underinsured motorist claim was instructed not to go out and speak to their insurers. Justice McDade raised the reasonable inference in her concurring opinion that not only was State Farm aware of the ambiguity of the undefined and unlimited in scope of time phrase, primarily resides. As Justice Wright infers, but this ambiguity was intentional as Justice McDade reasoned, and this is a quote, Thus, State Farm has not only heightened the policy's ambiguity regarding the meaning of primarily resides, it has, in its failure to define relevant times, created a tool it can manipulate to defeat the ambiguity of the undefined in scope of time. And she cites State Farm versus Williams. Also, and that would also be inferentially no clear precedent if you take the argument that is advanced by State Farm. Justice McDade's above inference is mirrored by Hutchins' argument in the first appeal, in our brief at pages 37 through 38, and our reply in pages 8 through 12, the original appeal of this matter. Wherein Hutchins and at that time his grandparents were in the case, pointed out the insurer has done nothing to assist in determining which residence is quote primary. It is reasonable to infer that this omission was intended to provide State Farm with a pretext to deny any claim where the issue of primary residence could be raised. In fact, in the first appeal, Mecklenburg pointed out that State Farm utilized the ambiguity of primarily resides to take one position before the reviewing court in Wisconsin and a whole different position of where and what primarily resides means in the Alabama Supreme Court case. So based on the contradictory arguments raised by State Farm and other jurisdictions, it's no wonder that Justice McDade inferred the ambiguity contained in the insurer's policy was an intentional creation. Ultimately, without a definition of the phrase primary resides and a time frame in which to apply such a definition, determining Reginald's primary residence is like nailing Jell-O to a wall. Or it's like asking someone, did it rain? Without identifying when or where. State Farm's argument that the existence of a bona fide dispute is not defined by or limited to the prayer for relief in the pending complaint. And that flies in the face of sub-law and the very purpose of pleadings. Okay. Pleadings without facts and facts without pleadings are equally defective. The issue regarding application of collateral estoppel on a lot of case doctrine is a little bit thorny. We have set it forth in a brief and I'm running out of time. We agree with State Farm that the court never reached the issue of primarily resides, that ambiguity. Because as they pointed out in their holding, they were unable to because that issue was not raised. What was raised was whether this boy resided with his grandparents except the ultimate issue and that was what was found in those justices' opinions. It must be shown that State Farm's assertion that the trial court properly considered the comments of Justice Wright and Justice McDade regarding the primarily reside language to be persuasive authority but not binding authority is only partially correct. And we set that forth. I'm running out of time. You will have five minutes until you respond. I'd like to ask also before I forget that should we prevail on this appeal, should Reginald prevail on this appeal, we respectfully request that the court grant attorney's fees for the former appeal as well as the present appeal. And I'll end with State Farm for nine years has been able to set their reserves, use their money, while a pretextual lawsuit that did not arrive at the issues was litigated needlessly. They never set forth a single fact in support of that. Just at all relevant times he didn't reside with them. And that's a conclusory statement. That's not facts. Thank you very much. Thank you. Ms. Green. Good morning. Ellen Green for counter-defendant at the Lee State Farm Fire and Casualty Company. May it please the court. I'd like to focus on three things. That's the standard of review, the actual pleadings, and the evidence that was presented on Hutchins' counterclaim for Section 155 damages. First, with respect to the standard of review, Hutchins relies on a standard of review of DeNovo in the case of Employers v. Elko. He also relies on a 2002 case from the First District, which in his brief he says that is what this court has held. Well, Elko is not controlling, because in that case the court merely applied the standard to a motion for judgment on the pleadings on a Section 155 claim. And there the insurer had admitted that in its pleadings that it waited over a year to file a declaratory judgment action after receiving notice of a claim that it had refused to defend. The case did not involve the review of a grant for summary judgment. And in its decision, the Supreme Court also noted that generally an abuse of discretion standard applies to a decision to award Section 155 fees and costs. The Supreme Court has never squarely addressed the issue, but this court, the Third District, has clearly and consistently applied an abuse of discretion standard to Section 155 claims. And these are cases cited in our brief, O'Connor v. Country Mutual, West American v. Yorkville, West Bend v. Norton. And in Norton, which is a 2010 case, this court affirmed the grant of summary judgment in favor of an insurer on a Section 155 counterclaim. And it specifically held, quote, that an abuse of discretion standard of review applies even though the trial court granted summary judgment, unquote. So clearly abuse of discretion is the proper standard for the court to apply in this case. With respect to the pleading, there's only one pleading that's at issue here on this appeal, and that's Hutchins' countercomplaint for statutory damages. This countercomplaint was filed in May 2004. It has never been amended. It's based on alleged conduct that occurred sometime between the date of the accident, which was June 14, 2003, and March 18, 2004, when State Farm filed the declaratory judgment. This is a nine-month time frame. There's just a handful of facts that are alleged in the complaint, which Hutchins' claims violated a laundry list of subsections of the insurance code and the administrative code. He alleges that he put State Farm on notice of this claim on August 6, 2003, which was two months after the accident. On December 1, 2003, he provided records and medical damages as a proof of loss to show that his damages were in excess of the $20,000 policy limits of the motorist that struck him. On December 5, just four days later, he notified State Farm that the other insurer had offered to settle for its $20,000 policy limits. He also demanded arbitration. He further alleges that State Farm failed to respond to these two letters, so he sent a third letter on December 29, 2003, the same month, stating that he would file for arbitration with the American Arbitration Association. And just to note, this is during the time that Hutchins alleges that there's no bona fide dispute as to coverage to excuse State Farm's delay in paying its claim. Attached to the complaint is the December 29 letter, in which his counsel states, quote, we will not, under any circumstances, agree to the arbitration of any coverage issue. He also enclosed an admission form from the hospital indicating Hutchins' address as with his grandparents. And he advised State Farm to read Coriasco v. Hutchcraft, 245 Illett 3rd, 969, which he stated was on point with the instant facts. And Coriasco is a case that dealt with the issue of the residency of a minor. His counsel also stated, quote, while the language of State Farm's policy differs slightly from that in Coriasco, this language difference neither negates the authority of that opinion, nor does it bolster an argument for non-coverage, as the relevant portion of State Farm's current policy form is ambiguous. Finally, his counsel threatened that if State Farm delayed payment of his claim by filing a DJ, he would counterclaim and request Section 155 damages. This all occurred in December 2003, within the same month that he provided State Farm with the medical records to support his claim. He further alleges that he filed a demand for arbitration with AAA on January 6, 2004. This was just one week later, and after he acknowledged that there was a coverage dispute with State Farm. He also alleges that State Farm then failed to appear at the arbitration and that he had to pay State Farm's portion of the fee, and that State Farm filed a declaratory judgment action on March 18, 2004, which was just over three months after Hutchins had provided the records for a proof of loss. For the post-litigation conduct that he alleges to support his claim, he alleged that State Farm filed a complaint that failed to state a cause of action. And within a few months, in 2004, Hutchins moved to dismiss the complaint under 2615 for failure to state a claim, and 2606 for failure to attach a complete copy of the insurance policy issue. The trial court granted that motion in August 2004, but the record doesn't show on what grounds the motion was granted. State Farm filed an amended complaint in August 2004, which Hutchins then answered. With respect to evidence, if you review the statement of facts in the appellant's brief here, it's devoid of any facts in the record to support the allegations of the counter-complaint, such as State Farm's alleged failure to investigate or promptly respond to the demands for payment. It simply summarizes his allegations of his pleadings and the arguments back and forth in summary judgment and such. But it's not until page 45 of the brief that he presents evidentiary facts such as deposition testimony. He cites two, and these are things he cited in response to State Farm's motion for summary judgment, and this is the note that Mr. Wiggins referenced in his presentation. There was a note by a State Farm manager dated December 3, 2003, and this is in the record at page 752 that he cites. This is two days after Hutchins provided the proof of loss in December, instructing an adjuster not to contact the insured as previously instructed, but to follow up with Hutchins' attorney to discuss and pin down residence of the minor at the time of loss. And if you look at that page just a few notes down, there's an entry of the same date by the same adjuster. She states, it appears that we have an issue of residency as well as whether or not the injured minor qualifies as an insured under the policy, which is the policy of the minor's grandparents. Correspondence we have received to date reflects the minor's address at the time of loss as 607 Laverne, Chicago. It appears minor's address switched to grandparent's address, 7203, which is after the date of the accident. Hutchins further relies on testimony from a State Farm manager that she did not request a legal opinion as to where Hutchins' residence was and did not know if an opinion was requested. In the same summary judgment response, they attached testimony from another State Farm manager, Todd Larson, stating that in response to the December 29, 2003 letter, he retained a law firm and obtained a written legal opinion on the matter in late January 2004, just one month after they received the letter. Finally, Hutchins states that no denial letter was sent before suit was filed in March, and that no State Farm representative actually went to visit the insured's home in the months after the accident to see if Hutchins had a bedroom there. On the summary judgment filings, State Farm also submitted additional evidence in the record that State Farm had opened a claim in March of 2003, which was identified as Hutchins' address as his mother's residence in Chicago, that it reviewed a copy of the police report with a fax date of July 22, 2003, which listed Hutchins' address as his mother's residence in Chicago. Also, a State Farm representative had a phone call with Hutchins' counsel after receiving the medical records around December 2, 2003, pointing out the residency issue. In addition, the letter from Hutchins' own attorney on December 29, 2003, in which he cited case law as to whether the minor was an insured, referenced a coverage dispute, and State Farm's ambiguous policy language, and recognized that the State Farm language was different, is consistent with the issue of whether Hutchins was an insured having been raised before suit was filed. Based on these facts, it was not outside the bounds of reason for the Tarracourt to conclude that during this time, when Hutchins alleged that there was unreasonable delay, there was a dispute as to whether Hutchins qualified as an insured under the State Farm policy. And this clearly was a bonafide dispute. State Farm had evidence to suggest that Hutchins resided with his mother in Chicago rather than with the insureds in Chicago. The court did not conclude the issue of whether Hutchins qualified as an insured no later than December 2 or 3, 2003, after receiving the medical records from Hutchins' counsel. The parties communicated regarding the existence of a dispute. And at that time, no Illinois court had found that resides primarily language used in the State Farm policy was ambiguous. And Mr. Wiggins argues that there's rules of construction that require the State Farm to be ambiguous. Well, you're supposed to construe ambiguous language against the insurer. But that's just nothing but a rule of construction. It doesn't determine whether this language is ambiguous in the first place or if it would be ambiguous as applied to the particular circumstances of a specific case. And courts in other jurisdictions have found that identical language to be unambiguous and applied it to preclude coverage. This court, in its ruling, instructed in O'Connor that the relevant inquiry on a Section 155 claim is whether there's a bonafide dispute. That this dispute was genuine was confirmed by the fact that the trial court found in favor of State Farm on the issue of whether Hutchins resided primarily with the insureds. And this court took three different approaches on the issue, as set forth in the Rule 23 order and as more fully discussed in our brief. And since this court issued the Rule 23 order, the first district held in Godina v. State Farm that the phrase resides primarily as used in an audit policy is not ambiguous and should be determined at the time of the accident. In light of all these circumstances, the trial court clearly did not abuse its discretion in granting summary judgment in State Farm's favor. One final thing I'd like to address is Hutchins' cross motion. It's really a misnomer. Hutchins filed this motion in August 2013 in combination with his motion to reconsider the grant of summary judgment in State Farm's favor, which was entered in July 2013. And when he filed it, he even stated, and this is in the record at page 1733, quote, this cross motion may appear to be a futile gesture given the court's order granting State Farm's summary judgment, end quote, but he asked the trial court to rule in his favor if the trial court granted his motion to reconsider, which it properly did. And in the case law, he cites in his brief, in support of the court being able to review the denial of his cross motion, the court, this is Clark versus Children's Memorial Hospital, the court reviewed the denial of a motion for summary judgment that had been made two years before final judgment was entered. Here, judgment had already been entered in favor of State Farm on the last remaining claim before Hutchins filed this motion. So it was proper for the court to deny it as untimely. But even if this court considers it on the merits, it was within the trial court's discretion to deny their request for section 155 damages based on the existence of a bona fide dispute as to coverage. One other thing is in the reply brief, they bring up the amend the whole doctrine. This was not an issue that was brought up in the trial court. It was also brought up for the first time in the reply brief. So for that reason, it has been waived. And if the court considers it, it only applies if the trial court considers it. But there has been unfair surprise as to a new defense being raised, and clearly the issue of whether Hutchins resided primarily with his grandparents was in fact litigated, and they participated in the litigation, and they cannot say that they were unfairly surprised by that as a defense. Should this court have no questions, we ask that it affirm the order of July 22, 2013, granting summary judgment in favor of State Farm, and the court, on December 9, 2013, denying Hutchins' motion for reconsideration and cross-motion for a summary judgment. Thank you. I believe it's pretty clear that the standard of determination is de novo, and I think it's something that you might make inferences for, because it appears to me that inimportance form is kind of applicable here in the way that State Farm has conducted this investigation as well as the litigation. Keep in mind that I represented Reginald Hutchins through his mother. The insureds at the time frames that counsel outlined for you, the Williams were not represented by anyone. They were the named insured, and the duty flowed to State Farm to conduct an investigation which would have made all of this needless. Resides primarily is an exclusion, and it is to be read narrowly, and it has to be clear, definite, and specific. And it absolutely wasn't, and that's what this court previously held. We don't test factual allegations in a summary judgment motion. It's not about factual material. It's about the pleadings. This notion that they put forth, State Farm puts forth that the decisions of the Supreme Court are advisory and that they are simply rules of construction, that's absolutely nonsense. There is a mischaracterization that is pointed out in our brief, and it's over 100 pages of briefs, and I apologize if my arguments are not as cogent, but it's so hard to determine exactly what you need to argue in this setting. But there is misrepresentation of what was thought in our pleadings. There is misrepresentation of what the court said because the court never found a bona fide dispute. The trial court was led into error by State Farm in making its finding that there was a quote bona fide dispute. There cannot be a bona fide dispute if your pleadings don't frame one, and their pleadings didn't frame one, and you have two justices of this learned court that indicate that this was intentional, and that this was designed to manipulate their policy in whatever way they saw fit under different circumstances, and that's demonstrated by the Wisconsin holding, by the Alabama holding, and it's demonstrated by what happened here before. And I feel like enough is enough, it's time for this young man to receive the full justice that he's entitled to, because there was no reason for State Farm to have not determined the whole thing about whether it was Laverne Avenue in Chicago or whether or not it was the address Rockland Court in Bolingbrook where the grandparents lived. If you've got primary resides, common sense is it's got to be two different residences. If they had gone out and done any kind of investigation, aside from their belief that school records on a 14-year-old, and they misrepresent that in their briefs, that he had applied to the school and they had the trial judge Petron Garrow do so, when that's absolutely untrue, the boy never applied at any other restrictive enrollment school. And that would not indicate that he had any intention to abandon or no longer reside with the grandparents whom he had resided with his whole life. Thank you very much. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. And with that, our court will stand and recess for panel change.